**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| RACHEL A. HANLEY, | Case No.: 1:26-cv-10575-DJC |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EQUIFAX INFORMATION SERVICES, LLC; and SANTANDER BANK, N.A., | |
| Defendants. | |

Rachel A. Hanley ("Plaintiff" or "Ms. Hanley"), by and through the undersigned counsel, brings this action on an individual basis, against Equifax Information Services, LLC ("Defendant Equifax" or "Equifax")[1] and Santander Bank, N.A. ("Defendant Santander" or "Santander") (all defendants collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

---

[1] Plaintiff and Defendant Equifax Information Services, LLC have reached a settlement in principle in relation to this matter and are in the process of finalizing the terms and performance attendant to that resolution. *See* Docket No. 23. Nothing in the instant First Amended Complaint changes that posture nor Plaintiff's request that the Court vacate all deadlines in this matter as to Defendant Equifax only. *Id.*

2.　　　However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant Equifax acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.　　　The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.　　　These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.　　　Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.　　　One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8.    The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S. C. § 1681(a)(4).

10.    The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items

3

of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11.     Plaintiff's claims arise out of Defendant Equifax's blatantly inaccurate credit reporting, wherein Equifax reported to Plaintiff's potential creditors that Plaintiff had an outstanding account balance after the account was paid off.

12.     Accordingly, Plaintiff brings claims against Defendant Equifax for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13.     Plaintiff also brings a claim against Defendant Santander for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and Defendant Equifax, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

15.     Rachel A. Hanley ("Plaintiff" or "Ms. Hanley") is a natural person residing in Franklin, Massachusetts, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.     Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street,

N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Massachusetts, including within this District.

17. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

18. Defendant Santander Bank, N.A. ("Santander") is a global financial institution with its headquarters in Boston, Massachusetts and is authorized to do business in the State of Massachusetts, including within this District.

19. Santander is a global financial institution and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## <u>JURISDICTION AND VENUE</u>

20. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## <u>FACTS</u>

**A.      Summary of the Fair Credit Reporting Act**

22. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25.    To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26.    The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**B.    Factual Background**

27.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting.  Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

28.     Defendant Equifax sells millions of consumer reports (often called "credit reports" or "reports") per day and also sells credit scores.

29.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant Equifax, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30.     Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant Equifax, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

31.     Defendant Equifax's consumer reports generally contain the following information:

(a)     Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers;

(b)     Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status;

(c)     Public Record Information: this section typically includes public record information, such as bankruptcy filings; and,

(d)     Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

32.     Defendant Equifax obtains consumer information from various sources.  Some consumer information is sent directly to Defendant Equifax by furnishers.

33.     The majority of institutions that offer financial services (e.g., banks, creditors, and lenders) rely upon consumer reports from CRAs (like Defendant Equifax) to make lending decisions.

34.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant Equifax's consumer reports.

35.     The information Defendant Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

36.     FICO Scores are calculated using information contained in Defendant Equifax's consumer reports.

37.     Defendant Equifax knows that FICO and other third-party algorithms (as well as the algorithms owned by CRAs) use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

38.     Defendant Equifax knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

39.     DTI compares the total amount a consumer owes to the total amount a consumer earns.

40.     The higher the amount of reported debt that a consumer has, or appears to have, or is rather *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it

will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit and at higher interest rates.

41. Defendant Equifax routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

42. Defendant Equifax fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers, including but not limited to, account balances, account statuses, payment histories, and payment statuses.

43. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant Equifax for its inaccurate credit reporting.

44. Thus, Defendant Equifax is on continued notice of its inadequate reporting procedures. Specifically, Defendant Equifax is on notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

45. Defendant Equifax has received and documented many disputes from consumers complaining that Equifax reported inaccurate information about them.

**C.     Plaintiff Settles and Closes Her Santander Account**

46. Plaintiff had an account with Santander, Account No. ending in 0682, opened on January 11, 2023 (the "Account").

47. In or around June 2025, Defendant Santander assigned Plaintiff's account to a collection agency, non-party Credit Control, LLC ("Credit Control").

48. On or about June 19, 2025, Credit Control offered Plaintiff to resolve the Account debt by making a one-time payment of $2,500.00.

49.    Plaintiff accepted the offer on or about June 20, 2025, and made all necessary payments to settle the Account debt.

50.    On or about July 3, 2025, Credit Control sent a letter to Plaintiff confirming that her debt had been resolved in its entirety.

51.    On or about July 8, 2025, Plaintiff received confirmation from Defendant Santander that Plaintiff's account has been settled in full; the letter further promised to "inform the credit bureaus, who will update your credit report accordingly."

**D.    Defendants Report that Plaintiff Still Has a Balance Associated with Her Santander Account**

52.    Sometime after having paid the Santander Account, Plaintiff decided to obtain copies of her credit files from Defendant Equifax and non-parties Trans Union and Experian.

53.    Plaintiff reviewed the pertinent details in her credit report and learned that her account was still being reported as having an outstanding balance.

54.    Specifically, her credit report reflected the Account as maintaining an outstanding and past-due balance in the amount of $3,986.00.

55.    Further, her credit report reflected the Account as having a current status of "charge off," although Plaintiff had paid off and settled her Account.

56.    Plaintiff was confused and distressed by this information because her account had been paid off.

57.    Plaintiff no longer owed $3,986.00 because she had settled that debt and owed zero dollars on the Account. Accordingly, the Account should have been reporting as paid off with a zero-dollar balance, and with a current status reflecting that she had paid off and settled her Account.

**E.     Plaintiff's Dispute Regarding the Inaccurate Credit Reporting in July 2025**

58.     In or around July 7, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff disputed the inaccurate information that Plaintiff still had an outstanding balance and past-due amount associated with the Account.

59.     Plaintiff identified the Account and explained that her Account had been paid off, that she no longer owed a balance, and that any reporting suggesting she owed a balance on the account was inaccurate.

60.     Plaintiff requested that Defendant Equifax reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

**F.     Defendants' Method for Considering Consumer Credit Report Disputes**

61.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

62.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

63.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

64.     It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

65.     Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued

to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

66.    Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

67.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

68.    These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

69.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

70.    The data furnishers, like Defendant Santander, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

71.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**G.    Defendant Equifax's Unreasonable Dispute Reinvestigation**

72. Upon information and belief, Defendant Equifax sent Defendant Santander an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2025 dispute to Equifax.

73. Upon information and belief, Defendant Santander responded to that ACDV, confirmed Plaintiff's dispute was valid, and furnished that the account should be updated to reflect that the account had been settled and paid, was closed, and had no outstanding or past-due balance.

74. Accordingly, Defendant Equifax updated the reporting of the account to reflect a settled for less than full balance status, a "Paid" activity designator, a "Date Closed" date of June 1, 2025, and an account balance of zero.

75. Almost as soon as Defendant Equifax updated the account in relation to Plaintiff's dispute, Defendant Santander, and upon information and belief, furnished with its routine monthly feed to Defendant Equifax the previous inaccurate and previously disputed account information, such as the account balance, and the account status.

76. Upon information and belief, Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute.

77. Upon information and belief, Defendant Equifax reinserted the previously disputed and removed account information, such as the account balance, and the account status.

78. Upon information and belief, Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's July 2025 dispute.

79. Upon information and belief, and despite the obvious discrepancy between Plaintiff's dispute, Santander's ACDV response, and Santander's most recently furnished and contradictory account balance information, Defendant Equifax failed to inquire with either

Plaintiff or Santander to resolve the discrepancy before the account balance, the account status, and other information disputed by Plaintiff.

80.    Thereafter, Defendant Equifax failed to completely correct or delete the balance amount in relation to the disputed Account information reported in Plaintiff's credit file and reports.

81.    Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute tendered on July 2025, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**H.    Defendant Santander's Unreasonable Dispute Reinvestigation on July 22, 2025**

82.    In or around July 2025, Defendant Santander received Defendant Equifax's ACDV in relation to a dispute that Plaintiff submitted on July 7, 2025.

83.    Defendant Santander failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

84.    Upon information and belief, Defendant Santander failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or around July 7, 2025.

85.    On July 22, 2025, Defendant Santander in its ACDV response verified to Defendant Equifax as accurate the disputed information, including the past due balance, the account balance, and the charge-off status.

86.    Defendant Santander negligently, and also knowingly and recklessly, violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to reliably modify,

14

delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

**I.    Defendant Santander's Unreasonable Dispute Reinvestigation on August 7, 2025**

87.    In or around July 2025, Defendant Santander received Defendant Equifax's ACDV in relation to a dispute that Plaintiff submitted on July 25, 2025.

88.    Defendant Santander responded to that ACDV on August 7, 2025, in which Santander confirmed that Plaintiff's dispute was valid, and furnished that the account should be updated to reflect that the account had been settled and paid, was closed, and had no outstanding or past-due balances.

89.    Accordingly, and in reliance on Defendant Santander's ACDV response, Defendant Equifax updated the reporting of the account to reflect a settled for less than full balance status, a "Paid" activity designator, a "Date Closed" date of June 1, 2025, and an account balance of zero.

90.    Almost as soon as Defendant Equifax updated the account in relation to Plaintiff's dispute, upon information and belief, Defendant Santander furnished with its routine monthly feed to Defendant Equifax the previous inaccurate and previously disputed account information, such as the account balance, and the account status.

91.    Defendant Santander failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

92.    Upon information and belief, Defendant Santander failed to review all relevant information provided by Defendant Equifax regarding Plaintiff's dispute tendered in or around July 25, 2025.

93.    Upon information and belief, Defendant Santander verified the disputed information as inaccurate and furnished corrected information but then immediately thereafter

furnished information reinserting the previously disputed account information, such as the account balance and a current payment status of charge off, to Defendant Equifax.

94.     Upon information and belief, Defendant Santander verified to Defendant Equifax that the disputed information was accurate after Santander had first indicated to Equifax that the information was inaccurate and should be removed and deleted.

95.     Upon information and belief, Santander had informed Equifax that the information should be deleted, and also thereafter that it should be reported and not deleted, because it has shoddy investigation and credit reporting procedures that allow it to convey contradictory messages to CRAs, like Equifax, or that allow it to not permanently delete information that it deemed to be inaccurate in response to its receipt of a consumer dispute.

96.     Defendant Santander negligently, and also knowingly and recklessly, violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to reliably modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

97.     Plaintiff reasonably believes that Defendant Santander continued to furnish data to Defendant Equifax and non-party Experian inaccurately, indicating that Plaintiff still had an outstanding balance associated with her already-paid-off account.

98.     Santander furnished that information to Equifax and Experian despite having knowledge that the information was not accurate, and despite also having indicated to Equifax to delete the disputed and inaccurate information.

**J.     Defendants' Continued Reporting of the Inaccurate and Disputed Account Information**

99.    In or around August 12, 2025, Plaintiff reviewed her Equifax credit report and identified that the Santander Account was reporting with a zero-dollar balance and a remark stating that it had been paid for less than full balance.

100.    Plaintiff was delighted because it appeared to her that Defendants had substantially corrected their reporting.

101.    At the time, Plaintiff's vehicle suffered from transmission and other issues which rendered her vehicle unsafe and unusable. Therefore, Plaintiff intended to secure financing to purchase a vehicle.

102.    Plaintiff desperately needed a vehicle in order to commute to work and other necessary travel.

103.    Notably, Plaintiff cares for her young child who is disabled and/or has non-typical abilities; as part of that care, Plaintiff frequently drives him to medical appointments and related engagements.

104.    Believing her credit profile and standing to have been improved, Plaintiff anticipated being approved for a car loan.

105.    Unbeknownst to Plaintiff, however, on or about August 30, 2025, Santander furnished to Equifax, in its monthly reporting cycle, that Plaintiff's Santander account maintained a past due balance of $3,986 dollars, a current, outstanding balance of $3,986 dollars, and an account status of charge-off.

106.    This was the third time since July 22, 2025, that Santander had furnished to Equifax information about the Santander account that was patently false and inaccurate.

107.    The first time that Santander did so was on July 22, 2025 in response to an ACDV in regards to Plaintiff's dispute dated July 7, 2025.

17

108.    The second time was on or about August 1, 2025, when Santander furnished to Equifax, in its monthly reporting cycle, that Plaintiff's Santander account maintained a past due balance of $3,486 dollars, a current, outstanding balance of $3,486 dollars, and an account status of charge-off

109.    And the third time that Santander did so was on August 30, 2025, in response to an ACDV in regards to Plaintiff's dispute dated July 25, 2025.

110.    On or about September 23, 2025, believing that her Santander credit account information had been corrected, and without knowledge that Santander had on August 30, 2025 reinserted the inaccurate information that it had previously removed, Plaintiff submitted an application for a car loan to Capital One.

111.    Capital One denied Plaintiff's application for a car loan, after it reviewed a consumer report about Plaintiff from Equifax, and based on information in that consumer report.

112.    Upon information and belief, and unbeknownst to Plaintiff at the time, Capital One's denial of Plaintiff's auto loan application was substantially caused by Defendants' inaccurate reporting of the Account as still maintaining a balance and past-due amount and charge off status, in the consumer report provided to Capital One.

113.    Upon information and belief, Capital One's auto loan denial in or around September of 2025 was substantially caused by Defendants' reporting of inaccurate information concerning the Account.

114.    On or about September 30, 2025, Plaintiff reviewed the pertinent details in her Equifax credit report and discovered that Defendant Equifax was reporting her Account as having an outstanding balance and past-due balance, and an Account status and current payment status that failed to indicate that she had paid off the Account balance.

115.    Specifically, her Santander Account was reporting with a balance and past due balance amount of $3,986.00, with no indication that the account had been paid off.

116.    Plaintiff was confused and extremely distressed by this information because her account had been paid off, and Equifax had already corrected its reporting prior.

117.    Indeed, Plaintiff had been diligent, spending time and resources, when she labored to find the money to settle and pay off her Account debt precisely in order that her credit standing be improved and no longer reflect the derogatory information.

118.    Plaintiff no longer owed $3,986.00 and that balance amount should not have been reported after the account had been paid off.

119.    Instead, Defendants' persistent, inaccurate reporting brought Plaintiff back to square one, undoing her work as if she had not paid the Account debt at all.

120.    To make matters worse, when Plaintiff reviewed her non-party Experian report on October 3, 2025, Plaintiff noticed that non-party Experian was reporting a balance of $3,986.00 for the Account with a status of "Account charged off. $5,986 written off. $3,986 past due as of August 2025."

121.    In or about October 2025, upon information and belief, Defendant Equifax was still reporting that Plaintiff had an outstanding balance and past-due balance on her account.

122.    On or about October 17, 2025, extremely shocked, surprised, and embarrassed at Defendant Equifax's inaccurate reporting, Plaintiff mailed a dispute letter to Equifax that disputed the outstanding balance associated with her account.

123.    In her dispute, Plaintiff identified the Account and explained that any notation that she still had an outstanding balance or past-due balance associated with her Account was inaccurate.

124. In her dispute, Plaintiff requested that Equifax reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

125. Upon information and belief, Defendant Equifax sent Defendant Santander an automated credit dispute verification ("ACDV") pursuant to Plaintiff's October 17, 2025, dispute to Defendant Equifax.

126. As a result of the inaccurate reporting of the balance amount, and despite Plaintiff's account having been paid off, Defendants made it practically impossible for Plaintiff to continue to obtain credit.

127. Indeed, on or about October 7, 2025, Plaintiff applied for a line of credit from PenFed, which was denied, upon information and belief, substantially due to the inaccurate reporting of the Account information by Defendants on or about that date.

128. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

129. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

130. As a standard practice, Defendant Equifax does not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the

credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

131.    Defendants are aware of the shortcomings of its procedures and intentionally choose not to comply with the FCRA to lower its costs.  Accordingly, Defendants' violations of the FCRA were willful.

132.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; denial of a Capital One auto loan; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant Equifax)

133.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

134.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

21

15 U.S.C. §1681e(b) (emphasis added).

135.    On numerous occasions, Defendant Equifax prepared patently false consumer reports concerning Plaintiff.

136.    Defendant Equifax readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

137.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

138.    As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

139.    Defendant Equifax's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

140.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

<u>**COUNT II**</u>
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Equifax)**

141.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

142.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id.*

143.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

144.    On at least one occasion during the past two years, Plaintiff disputed the inaccurate information with Defendant Equifax and requested that Defendant Equifax correct and/or delete information from her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, inaccurate reporting of the Santander Account as still maintaining a balance and past-due amount of $3,986.00.

145.    In response to Plaintiff's dispute, Equifax failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

146.    Indeed, Defendant Equifax briefly removed and then promptly reinserted the disputed inaccurate information.

147.    Defendant Equifax failed to properly, completely, or permanently correct and delete the disputed past-due and outstanding balance amount, and other erroneous account status

23

information that indicates a current charge-off, concerning Plaintiff's Santander Account from her credit file.

148.    Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

149.    As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; denial of a Capital One auto loan; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

150.    Defendant Equifax's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

151.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(Only Claim for Relief Against Defendant Santander)**

152. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

153. Defendant Santander furnished the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

154. Defendant Santander violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to by responding to the ACDV on July 22, 2025 by verifying the inaccurate information; by failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Equifax.

155. Upon information and belief, Defendant Santander verified to Defendant Equifax that the disputed information was accurate after Santander had first indicated to Equifax that the information was inaccurate and should be removed and deleted.

156. Upon information and belief, Santander had informed Equifax that the information should be deleted, and also that it should be reported and not deleted, because it has shoddy investigation and credit reporting procedures that allow it to convey contradictory messages to CRAs, like Equifax.

157. As a result of Defendant Santander's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; denial of an auto loan by Capital One; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and

effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

158.    Defendant Santander's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

159.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Santander in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

1)    Determining that Defendants negligently and/or willfully violated the FCRA;

2)    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

3)    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

4)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: June 9, 2026,                    */s/ Levi Y. Eidelman*
                                        Levi Y. Eidelman
                                        *admitted pro hac vice*

26

**CONSUMER JUSTICE LAW FIRM**
72-47 139th Street
Flushing, New York 11367
T: (718) 360-0763
E: leidelman@consumerjustice.com

Nicola S. Yousif, MA Bar No. 679545
**SHIELD LAW, LLC**
157 Belmont Street
Brockton, Massachusetts 02301
T: (508) 588-7300
E: nick@shieldlaw.com

*Attorneys for Plaintiff Rachel A. Hanley*

27